Lockwood, Justiee, delivered the opinion of the court. This is a motion for leave to file the record in this cause. The appeal was taken on the 29th of September, 1843, and the bond filed within thirty days thereafter. The appellant, to excuse his default in not filing- the record on or before the third day of this term, read an affidavit, which was filed the 14th of December last, stating, in substance, that the appellant had given directions to the" clerk below to make out the transcript, and forward it to Springfield,.in time to have complied with the statute, but that the clerk had neglected to make out the record, owing to some difficulty under which he labored as to the manner of making it out. The affidavit further stated that directions were immediately given to the clerk how to make out the transcript, and that the appellant expected to receive it in a few days. On filing this affidavit, a motion was> entered for leave to file the record at a future day. The motion was not acted on by the court, [*581] nor was the action of filie court requested by the appellant, until the 8th of 'January, when he presented a record in the cause, and asked leave to file it. The 33d section of the act regulating the practice of the supreme and circuit courts in this state (R. L. 494; Gale’s Stat. 536) requires that the appellant shall lodge in the office of the clerk of the supreme court an authenticated copy of the record or decree appealed from, by or before the third day of the next succeeding term of said court, provided that if there be not thirty days between the time of making the appeal, and the sitting of the said court, then the record shall be lodged as aforesaid, at or before the third day of the next succeeding term of said court; otherwise said appeal shall be dismissed, unless further time to file the same shall have been granted by the supreme court, upon good cause shown. The construction of this section of the practice act is, that the appellant • must file the record in the office of the clerk of this court, within the three first days of the next ensuing term, where the appeal is allowed and the bond filed thirty days before the sitting of the court; or within the time limited by the statute to file the record, obtain an order for further time to file it, or the appeal must be dismissed. The appellée is not bound.to follow the appeal any longer than the third day of the court, unless the r.ecord has been filed, or further time has been allowed in which to file it. After the time for filing the transcript has expired, the appellee may at any time thereafter appear and have the appeal dismissed. It was not sufficient for the appellant simply to file his affidavit and enter his motion; he should have asked for and obtained some decision on his motion. If he could not obtain a decision, it must be considered as equivalent to a denial. The appellee having entered a cross-motion to dismiss the appeal, it must be allowed with costs. The construction given to this section of the practice act can work no serious injury to the appellant. If he has merits, he can use the record for obtaining a supersedeas. Appeal dismissed. APPENDIX The following dissenting opinion of Chief Justice Wilson should have been inserted in the third volume of these Reports, on page 585, where the ease of Mason v. Parke is reported; but it did not come to the hand of the reporter .till after that volume was published. George Mason v. Benjamin F. Parke. [*582] Appeal front Richland. Wilson, Chief Justice,delivered the following dissenting opinion: This is an action of debt instituted before a justice of the pea.ce, to recover the penalty given by the “ act to prevent trespassing by cutting timber.” R. L. 602 ;■ Gale’s Stat. 679. The case was taken by appeal into the circuit court, and upon a decision of the case against the defendant, lie appealed to this court. Upon the trial below, the admissions of the defendant, that the plaintiff was the owner of the land upon which the trees.were cut, was allowed by the court to go to the jury, as competent testimony to support the plaintiff’s action. This decision is assigned for error. Th'e counsel for the defendant contends that the plaintiff in this action should be required to prove title to the land, by deed, or other equivalent testimony in writing. There are ¡geveral other assignments of error, but they either resolve themselves into the one noticed, or are such as cannot influence the decision of this case, and do not therefore require to be noticed. In my opinion, the admissions of the defendant were competent evidence, because the question of title to the land was not in issue, the object of the statute being to punish the defendant for the trespass, and not to try the title to the property trespassed upon. The great object in construing a statute is to ascertain the intention of the legislature. To do this we are to take into con-side,ration the mischief intended to be corrected, and the remedy by which it is to be effected. The mischief obviously designed to be corrected by this statute was the unlawful destruction of timber, and as the means of effecting this object, it has imposed upon the offender an adequate penalty, to be en- [*588] forced by an easy and expeditious remedy. To understand, this subject it will be necessary to notice with some attention tbe peculiar provisions of the statute. The 1st section imposes the penalty of eight dollars upon any person who shall cut or injure any oak, etc., tree, upon the land of any per-••n or person's, without the permission of the owner, etc. The 2d section provides that the above penalty shall be recoverable either by action of debt, in the name and for the use of the owner of the land, or by action qui tam, in the name of any person who will first sue for the same, provided that if the action shall be instituted before a justice of the peace, and the defendant shall set up title to the land, and shall forthwith enter into bond and security to prosecute his claim to effect, etc., or to defend an action to be instituted against him under this statute in any court of record, and in either case to abide andsatisfy the judgment that may be given; then the justice shall dismiss "the parties and suspend all further proceedings; and so soon as the action shall be renewed or instituted in another court, he shall send the recognizance, etc., to such court. The 3d section provides that if the recognizance shall be forfeited by the defendant’s not prosecuting his title, the claim of the plaintiff shall,be taken for confessed, and judgment entered therefor. And a like consequence results from a failure of the defendant to defend the suit. The same remedy and the same penalty are given for cutting trees on land appropriated to the use of schools or religion, and the overseers of the poor are required to enforce it. From a consideration of all these provisions of the statute, its policy must be manifest. The value and scarcity of timber in some parts of the state called for more efficient protection than that afforded by the action of trespass, which was often liable to be defeated by tbe w'ant of requisite testimony, and even when successful, the amount recovered was not always commensurate to the mischief occasioned, or adequate to its sup*pression. To obviate the difficulties that might be interposed to a recovery in an action of trespass, for the destruction of timber, and to inflict a punishment adequate to the suppression of the offence, or the correction of the offender, was the inducement therefore for the passage of this law. But these objects will be defeated, if in an action of debt for the penalty, the plaintiff is held to stricter proof, and is required to adduce higher evidence of title than would enable him to recover in trespass. I can discover nothing in the statute that will warrant this rule. A fact that is not in issue need not be proved. In this action the title to the land is not in issue. The act forbidden is the cutting of timber belonging to some'person or persons. That is therefore the gist of the action, and the only question to be tried. If the defendant can show title [* 584] in the government, that will defeat a recovery; because trespasses upon these lands are not within the statute, the government having prescribed a different punishment for trespassing upon its lands; in addition to which the .act requires the trees to be upon the land of some person or persons, terms which are considered not to embrace the government; and this was the ground upon which the case of Wright v. Bennett, 3 Scam. 258, was decided. It did not appear from the declaration in that case, whether the plaintiff or the government owned the land. That the statute did not contemplate any investigation or .proof of title in a trial before a justice is manifest from the requisition, that when a defendant sets up a title, the justice shall dismiss the parties, and suspend the proceedings; bufif the defendant fails to establish his title, then the claim of the plaintiff is to be considered as confessed, and a judgment rendered therefor. No evidence of title is required of the plaintiff, and the defendant cannot defeat a recovery by showing title in a- third person, for that would involve an investigation which cannot take place before a justice. The. defendant can set up title only in himself, and then the burthen of proof must necessarily rest upon himself. I cannot therefore perceive upon what principle the plaintiff can be held to the production of the highest evidence of title, in this case; for if it cannot be required of him before a justice, it cannot in the circuit court, inasmuch as this case is brought by appeal from a justice originally, and must consequently be tried by the same rules that are prescribed for the government of the trial before the justice. But without relying upon the ground of this being an appeal from a justice, as exempting the plaintiff from the necessity of proving title by deed or patent, I think, that from a fair interpretation of the statute, it cannot be required in any case. It was indispensable to a description of the offence in the statute, as well as in the suit, to designate ownership in the land in such terms as would discriminate between such trespasses as are forbidden,, and such as are not. The want of that discrimination was the fatal defect in Wright v. Bennett. The act was meant to apply to all the lands in the state, except such as belong to the government, and the terms,- timber growing “upon the land of any person or persons,” is no farther descriptive of the owner of the land, than is necessary to make this discrimination. Except for this purpose-, and the additional one, in a qui tam suit, of showing who is entitled to a moiety of the penalty that may be recovered, there is no object in requiring any designation of the owner of the land upon which the trespass is committed. In the imposition of this penalty, as in other cases of wanton invasion of individual rights, for which penalties are inflicted, regard was had to the public interest as well as the protection of private rights. This is evinced by the fact, that half of the penalty is given to the prosecutor as an inducement to carry it into effect; and no preference of prior right of action is allowed to the owner of the land, but the penalty is given to whoever will first sue for the same, without any [*585] regard to ownership; and except in the single instance in which provision is made for the defendant to assert his title. The term title is not used in the whole statute, and it is only when the defendant sets up title in himself or the government that it can become the subject of litigation, or contest, in an action upon the statute, and then it is seen that no proof is required of the plaintiff, but that the onus probandi rests exclusively upon the defendant. Under any other circumstances it is of no consequence to the defendant in whom the title is for the penalty is incurred by the trespass, let the title to the land be in whom it may, except in the instance named! From these circumstances I cannot resist the belief that the admissions of the defendant, that the plaintiff was the owner of the land upon which the trees were cut, was legal testimony upon that point. It must be admitted that if any testimony of the plaintiff’s title is admissible the'admissions of the defendant are, and to exclude all parole evidence would, in some cases, exclude the only kind of testimony by which the plaintiff’s title can be established, as where his title is founded upon possession under the statute of .limitation. By the present law seven years adverse possession gives the occupant a valid title against all the world, with some exceptions, and only twenty yearswas required for this purpose under the former statute, and there is nothing in this case that shows the nature of the plaintiff’s title, nor anything from which the court can presume that he holds by patent or inheritance, rather than under the statute of limitations. But if we are allowed to indulge in conjectures upon the subject the presumption is that he holds by that kind of title which he proved; that is, by parol, inasmuch as it does not appear that there is any other kind in existence. When the plaintiff’s title is admitted by the defendant, written title will never be presumed, so as to defeat that admitted. 4 Wend. 560. Again, the statute authorizes an action qui tam, in the name of any one who will first sue for the penalty. How, it may be asked, is a plaintiff, who is a stranger to the title to the land, able to adduce the evidence contended for in support of his action. He cannot be presumed to know more of the nature of the title, or the evidences by which it is to be established, than any other one having no interest in or connection with it. And even if he should, his information will avail him nothing, because he has neither the possession nor control of the title papers, nor has he any authority to compel a production of the evidences of title by the owner of the land. A rule, therefore, that would require of the plaintiff the production of evidence of title that has no existence, as in the case of title founded on possession, or to exact of him the exhibition of that character of testimony which is neither in his knowledge, possession, or control, as would necessarily be the case under the rule contended for, in a qui tam action, would, in the one case, nullify the act, and in the other render it ['*'586] almost totally inoperative. Alike unjust and partial consequence would result from the nature of the estate required in the plaintiff as would from the nature of the proof exacted of him. If an absolute fee simple estate in the land is required to be proved there can be no recovery under the statute, for a trespass upon land to which the plaintiff has only an equitable title, or an estate for life, as tenant by the courtesy, or in dower, or an estate upon condition, reversion, or remainder. A destruction of the whole of the timber, upon lands thus held, would not entitle the owner, or any other one, to impose the penalty, under the construction contended for. This unequal and partial operation, which denies to the property of one a means of protection that is given to another, was certainly never intended, and would be obviated by such a construction of the statute as would allow parol proof of any freehold estate, to authorize a recovery. This would be in accordance with the well settled rules of construction, which requires that a statute which is ambiguous and susceptible of two interpretations, one of which will restrict and obstruct its operation, and the other render it operative and efficient, shall receive that construction which will promote its operation anil efficiency. Such a construction will facilitate the execution of the law, and work no injustice or wrong to the defendant. It is a fundamental principle that no one can be punished twice fcr the same offence, and on a second prosecution, for tiie same offence, the identity of the first conviction can be established with equal facility, whether obtained upon the one or the other kind of testimony; and a mistake in the ownership of the land would not render it less effectual. But aside from the reasons deducible from the statute itself, upon general principles, the admissions of the defendant were competent evidence in this case; and this, it is to be observed, is the only question to be decided. It is a general rale that a fact not directly in issue as the gist of the action may be proved by secondary evidence, as the question of marriage or the official character of a man, for example. When these questions are in issue as the foundation of an action they must be proved by the highest character of evidence; but when they arise collaterally, as the title to the land does in this case, they are capable of proof by a secondary grade of evidence. In this case the trespass is the gist of the action and the ownership cannot be put in issue but by the defendant’s setting up title. It is a collateral fact, to be made out more for the purpose of showing where, than against whom, the offence was perpetrated. So, too, by analogy to other penal or Criminal prosecutions, parol testimony of the defendant’s admissions was competent testimony. In no prosecution for an offence against the land of another, is it ever necessary- to prove title, in the same [*587] manner that is required to divest, or pass title. Take, for instance, the case of a prosecution for the penalty imposed by statute, for cutting or destroying a boundary tree or other landmark, to the injury of any person.; ora prosecution for burning a dwelling house, the property of any other person. It cannot be controverted, that parol testimony of the admissions of the defendant that he destroyed the landmark, or burned the house, as charged, would be competent testimony to prove either of these facts, and would also be competent to prove the title to the land, as charged by the prosecutor. Both of these cases are like the present one, and the language of the statute as relates to the ownership of the land, upon which the offence is committed, is like that ,used in creating this offence for which the defendant is prosecuted in this case. To my mind, the offences of cutting or removing a boundary tree, to the injury of any person, and that of burning a house, the property of any other person, are not distinguishable, in principle from the offence of cutting or destroying an oak, or other tree, standing upon land belonging to any other person or persons. In each of the cases the act forbidden, and for which the penalty is given, is an unlawful injury of the real estate of another person. And if in a prosecution for either‘of the offences, parol evidence of the admissions of the defendant are legal testimony, that the title to the land is in the person claiming, or charged to be the owner, it would seem to follow conclusively that the same kind of testimony would be equally legal, to prove the same fact, in a prosecution of either of the other offences. In all the cases where the highest evidence is required, it is because the testimony already given, shows that there is higher testimony in the case; but here neither the testimony, nor any part of the case shows the existence of any other title than that proved by the admissions of the defendant. And in no case has the court, upon proof of one title, by one character of testimony, inferred the existence of another title, or the existence of higher evidence, than that produced. The testimony must, show it in this case; the admissions of the defendant do not show the plaintiff to have any written evidence of title. The exclusion of the defendant’s admissions of guilt, in this case, forms an exception in the whole catalogue of crimes. It is admitted, even in prosecutions for bigamy, in many states, and the reason for its rejection in such cases, when it is not admitted, is because the confession may be induced to escape the odium of illicit intercourse. But there is another view to be taken of this question. Allowing that it was necessary in this case for the plaintiff to prove title to the land, the legality, and sufficiency of the parol proof of the admissions of the defendant, for that purpose, is fully established by authority. In the case of Jackson, ex. dem. v. Dennis, 4 "Wend. 560, this point came directly before the court, and it was decided that the plaintiff might give evidence of the parol admissions of the defendant, that the plaintiff was [* 588 ] the owner of the land in controversy. This is directly upon the question to bo determined in this case. The only evidence of the plaintiff’s title was the parol admissions of the defendant, and there the plaintiff was allowed to prove by parol, and they were held sufficient to entitle him to recover. In the case of Jackson, ex. dem. v. dole, 4 Cowen, 593, the point was also decided, and the parol acknowledgments of the defendant were allowed to be good evidence of the plaintiff’s title. In the opinion delivered in this case, the court has reviewed all the decisions upon this question, and after stating the admissfon of the defendant, which was, in effect, “ that the land in controversy belonged to Mrs. Cooper,” under whom the plaintiff claimed, the court proceeds to say: “ The admissions of the defendant do not fall within the class of eases in which it has been held that parol acknowledgments, as to the title of real estate, are inadmissible. I think it will be found in all these eases, either that a title had been previously made out, which was sought to be divested by parol admissions, contrary to the statute of frauds, or it appeared from the acknowledgments themselves, that there had been written conveyances, and that the admissions, therefore, were not the best evidence that existed in the case.” These decisions are immediately upon the question as to the admissibility of parol declarations to prove title to land, and being in cases in which the title, and not the possession of land, was in controversy, they must be considered as settling the point, as far as the authority of the supreme court of New York can do so. And as the,decisions of that court are generally considered entitled to great respect, I think they may be considered as having settled this question correctly, especially as there is no authority produced that questions their correctness. Upon the authority of the cases cited, therefore, and upon principle, I must consider the aeknowledgmentsof the defendant good evidence. In this case, as in those referred' to, there was no evidence of any written title, and no claim even of any title by the defendant here. The testimony cannot operate, therefore, to divest or transfer any title, contrary to the statute of frauds, which is the only reason for excluding parol testimony in any case. For these reasons I feel constrained to dissent from the opinion of the majority of the court.